# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| VINCENT DODSON, et al., <br><br> Plaintiffs, <br><br> v. <br><br> BEIJING CAPITAL TIRE COMPANY, LTD, et al., <br><br> Defendants. | CIVIL ACTION NO. 3:14-CV-01358 <br><br> (MEHALCHICK, M.J.) |

## MEMORANDUM

Before the Court are six motions *in limine*; four filed by the Plaintiffs, Vincent Dodson and Rosalin Davis-Dodson, and two by Defendant, World Wide Distribution, Inc. Three motions seek to preclude testimony from expert witnesses. The remainder seek to bar the introduction of evidence on contributory negligence by Vincent Dodson or his employer, and evidence on a lack of prior similar incidents to the one that caused Dodson's injuries. For the reasons articulated below, all six motions are **DENIED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

As the Court writes primarily for the parties, the background and history are limited to the immediately relevant circumstances of the pending motions.

This case stems from injuries suffered by Plaintiff Vincent Dodson, when a Beijing Capital Tire Company ("BCT") tire ruptured while Dodson mounted and inflated the tire during his employment as a tire technician at Kost Tire and Auto Service. (Doc. 1). On July 15, 2014, Dodson filed suit against Defendants BCT and World Wide Distribution, Inc. (Doc. 1). A separate action against Defendant Reemo Resources International, LTD was consolidated with this action on January 6, 2016. (Doc. 16). To date, only World Wide Distribution has

appeared, and default judgment was entered against Reemo Resources on February 9, 2016. (Doc. 19).

Two causes of action remain for adjudication: one for strict products liability predicated on a defective design and negligence on the part of World Wide Distribution, Inc. for failing to adhere to NHTSA guidelines on inquiry into the safety of the product and in allowing an unsafe product to enter the market. Dodson asserts that an outdated "weftless" bead design caused the tire to rupture during the mounting process, causing multiple injuries, numerous surgeries, and essentially the loss of the use of his dominant arm. A weftless bead design relies on a cluster of thinner metal wires wrapped around the tire to maintain structural integrity. Dodson asserts that modern tires have long since abandoned such a design, with manufacturers instead relying upon a single, thicker wire.

The parties have each filed motions *in limine* in anticipation of trial. In addition to briefing, the Court held oral argument on each motion during the September 25, 2017 pretrial conference. Defendant World Wide Distribution, Inc. seeks to bar the testimony of Plaintiff's experts Allan J. Kam and William J. Woehrle pursuant to Rule 702 of the Federal Rules of Evidence. It argues that Kam's testimony does not speak to causation and will only confuse the jury. (Doc. 38; Doc. 39). It further submits that Plaintiff's causation expert, William Woehrle, is not qualified to render the expert opinion anticipated. (Doc. 40; Doc. 41).

Plaintiffs seek to preclude testimony from Defendant's expert, Alfred Cipriani, on the grounds that Cipriani's opinion lacks a proper foundation and engages in improper speculation. (Doc. 47; Doc. 48). Further, Plaintiffs ask the Court to restrict any testimony relating to contributory negligence on the part of Dodson (Doc. 43; Doc. 44), Kost Tire and Auto Service (Doc. 45; Doc. 46), and on a lack of prior, similar incidents. (Doc. 49; Doc. 50).

## II. STANDARD OF REVIEW

The court is vested with broad inherent authority to manage its cases, which carries with it the discretion to rule on motions *in limine* prior to trial. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984); *In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 260 (3d Cir. 1983), *rev'd on other grounds sub nom.*, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986) (noting that the court exercises its discretion to rule *in limine* on evidentiary issues "in appropriate cases"). Courts may exercise this discretion in order to ensure that juries are not exposed to unfairly prejudicial, confusing or irrelevant evidence. *United States v. Romano*, 849 F.2d 812, 815 (3d Cir. 1988). Courts may also do so in order to "narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990) (citation omitted). In considering motions *in limine*, which call upon the court to engage in preliminary evidentiary rulings under Rule 403 of the Federal Rules of Evidence, the Court begins by recognizing that these "evidentiary rulings [on motions *in limine*] are subject to the trial judge's discretion and are therefore reviewed only for abuse of discretion . . . . Additionally, application of the balancing test under Federal Rule of Evidence 403 will not be disturbed unless it is 'arbitrary and irrational.'" *Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2016 WL 454817, at *2 (M.D. Pa. Feb. 5, 2016) (citing *Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1213 (3d Cir. 1995) (citations omitted)); *see Bernardsville Bd. of Educ. v. J.H.*, 42 F.3d 149, 161 (3d Cir. 1994) (reviewing *in limine* rulings for abuse of discretion).

The Federal Rules of Evidence provide that relevant evidence is generally admissible.[1] FED. R. EVID. 402. Evidence is "relevant" if its existence simply has "any tendency to make a fact more or less probable than it would be without the evidence" and "the fact is of consequence in determining the action." FED. R. EVID. 401(a)-(b). However, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice." FED. R. EVID. 403. The balancing test under Rule 403 provides as follows:

> [t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.

FED. R. EVID. 403.

Federal Rule of Evidence 702 governs the admissibility of expert testimony and requires an expert witness to have "specialized knowledge" regarding the area of testimony. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

---

[1] The Federal Rules of Evidence can aptly be characterized as evidentiary rules of inclusion, which are designed to broadly permit fact-finders to consider pertinent factual information while searching for the truth. *Ely v. Cabot Oil & Gas Corp.*, No. 3:09-CV-2284, 2016 WL 454817, at *3 (M.D. Pa. Feb. 5, 2016). The grounds for exclusion of evidence under Rule 403 are described as an exception to the general rule favoring admission of relevant evidence, and by permitting the exclusion of relevant evidence only when its probative value is "substantially outweighed" by other prejudicial factors, the Court's discretion in considering evidentiary rulings should consistently be exercised in a fashion which resolves all doubts in favor of the admission of relevant proof in a proceeding, unless the relevance of that proof is substantially outweighed by some other factors which caution against admission. *Ely*, 2016 WL 454817, at *3.

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> **(b)** the testimony is based on sufficient facts or data;
>
> **(c)** the testimony is the product of reliable principles and methods; and
>
> **(d)** the expert has reliably applied the principles and methods to the facts of the case.
>
> FED. R. EVID. 702.

"Rule 702 has three major requirements: (1) the proffered witness must be an expert, i.e., must be qualified; (2) the expert must testify about matters requiring scientific, technical or specialized knowledge [, *i.e.,* reliability]; and (3) the expert's testimony must assist the trier of fact [, *i.e.,* fit]." *United States v. Schiff*, 602 F.3d 152, 172 (3d Cir. 2010) (alterations in original) (quoting *Pineda v. Ford Motor Co.*, 520 F.3d 237, 244 (3d Cir. 2008)).

In general, the Federal Rules of Evidence embody a strong preference for admitting any evidence that may assist the trier of fact. FED. R. EVID. 402. Moreover, Rule 702 in particular "has a liberal policy of admissibility." *Kannankeril v. Terminix Int'l, Inc.*, 128 F.3d 802, 806 (3d Cir. 1997).

First, an expert is qualified if "the witness possess[es] specialized expertise." *Schneider ex rel. Estate of Schneider v. Fried*, 320 F.3d 396, 404 (3d Cir. 2003). The United States Court of Appeals for the Third Circuit interprets the qualifications requirement liberally, and notes that "a broad range of knowledge, skills, and training qualify an expert as such." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994); *Betterbox Commc'ns Ltd. v. BB Techs., Inc.*, 300 F.3d 325, 327-28 (3d Cir. 2002) ("[T]his specialized knowledge can be practical experience as well as academic training and credentials . . . ."). Thus, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best

qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996); *see Pineda*, 520 F.3d at 244 & n.11 (collecting cases that illustrate the permissive nature of qualifications requirement). "However, at a minimum, a proffered expert witness must possess skill or knowledge greater than the average layman." *Betterbox*, 300 F.3d at 328 (quotation omitted).

The second requirement under Rule 702 is that "the process or technique the expert used in formulating the opinion is reliable." *Paoli*, 35 F.3d at 742. Therefore, "the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation'; the expert must have 'good grounds' for his or her belief." *Paoli*, 35 F.3d at 742 (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 590 (1993)). The *Daubert* court noted that the assessment of whether testimony is based on a reliable foundation is "flexible." *Daubert*, 509 U.S. at 594.

The third and last requirement under Rule 702 is "that the expert testimony must fit the issues in the case." *Schneider*, 320 F.3d at 404. This requirement is satisfied where the "expert testimony proffered . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Downing*, 753 F.2d at 1242; "Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." *Daubert*, 509 U.S. at 591-92. Although the applicable standard for determining "fit" is "not that high," it is nonetheless "higher than bare relevance." *Paoli*, 35 F.3d at 745.

As a final note, in performing its gatekeeping function to determine whether an expert's proffer is reliable and relevant under *Daubert* and Rule 702, the trial court "is not to weigh the evidence relied upon or determine whether it agrees with the conclusions reached therein."

*Walker v. Gordon*, 46 F. App'x 691, 695 (3d Cir. 2002) (not precedential) (citing *Breidor v. Sears, Roebuck & Co.*, 722 F.2d 1134, 1138-39 (3d Cir. 1983) ("Where there is a logical basis for an expert's opinion testimony, the credibility and weight of that testimony is to be determined by the jury, not the trial judge.")).

In keeping with this framework, the Court turns to each of the motions *in limine* filed by the parties.

## III. DISCUSSION

Because a determination in favor of the Plaintiff on the introduction of evidence regarding contributory negligence necessarily may render Cipriani's opinion irrelevant, the Court addresses the motions on the scope of evidence to be offered first.

### A. EVIDENCE ON THE CONTRIBUTORY NEGLIGENCE OF DODSON IS ADMISSIBLE.

Plaintiffs argue that evidence of misconduct, negligence, or recklessness on the part of Vincent Dodson should not be admitted, as Pennsylvania law "precludes a defendant in a strict liability case from raising the plaintiff's negligence as a defense to liability or causation." (Doc. 44, at 4).

Pennsylvania adheres to the definition of strict liability provided by the Second Restatement of Torts having declined to embrace the revised definition provided by the Third Restatement. *See Gilmore v. Ford Motor Co.*, Nos. 2:12-CV-00547; 2:12-CV-00548, 2013 WL 869382 (W.D. Pa. Mar. 7, 2013); *Tincher v. Omega Flex, Inc.*, 104 A.3d 328 (Pa. 2014). Under the Restatement (Second):

> (1) [o]ne who sells any product in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if
>
> > (a) the seller is engaged in the business of selling such a product, and

> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.
>
> (2) The rule stated in Subsection (1) applies although
>
> > (a) the seller has exercised all possible care in the preparation and sale of his product, and
> >
> > (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Restatement (Second) of Torts § 402A (1965).

Plaintiffs point to the comments appended to § 402A, which read, in part:

> [s]ince the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.

Restatement (Second) of Torts § 402A cmt. N (1965).

Defendant counters that strict liability is not the only cause of action, as the Plaintiffs also have a claim for negligence pending. (Doc. 52, at 5). As consideration of Plaintiff's negligence claim would require consideration of contributory negligence, Defendant argues that preventing the admission of such evidence due to strict liability would prevent defense on the negligence action.

The Court finds that a properly instructed jury should be able to separate the issue of any evidence on contributory negligence by the Plaintiff from consideration of a theory premised upon strict liability. The question then becomes whether evidence of Plaintiff's negligence is relevant to the strict liability action. Defendant submits that evidence of negligence is relevant

to the causation element of a strict liability claim, as manufacturers must anticipate the expected use of a product.

"Although evidence of a user's negligence cannot be introduced at trial to excuse a defective product or to reduce recovery by comparing fault, a plaintiff's conduct in a strict products liability action may be relevant as it relates to causation." *Wright v. Ryobi Technologies, Inc.*, 175 F.Supp.3d 439, 447 (E.D. Pa. 2016) (citing *Madonna v. Harley Davidson, Inc.*, 708 A.2d 507, 508 (Pa. Super. Ct. 1998)). The plaintiff must establish that the product was defective and that the defect was the proximate cause of the injury suffered. *See Wright*, 175 F.Supp.3d at 448 (citing *Madonna*, 708 A.2d at 508). Once a defect causing harm is established, negligence of the user is irrelevant. *Wright*, 175 F.Supp.3d at 448.

"Although in a strict products liability case the plaintiff's negligence or contributory negligence is not at issue, such evidence does bear on causation." *Wright*, 175 F.Supp.3d at 449. Evidence of misuse, including unforeseeable, outrageous, and extraordinary use of a product, is admissible in considering the causation element of a strict products liability design defect claim. *See Wright*, 175 F.Supp.3d at 448 (citing *Moyer v. United Dominion Indus., Inc.*, 473 F.3d 532, 542 (3d Cir. 2007); *Nathan v. Techtronic Indus. N. Am., Inc.*, 92 F.Supp.3d 264, 275 (M.D. Pa. 2015)). The defendant bears the burden of proving the misuse of a product. *Reott v. Asia Trend, Inc.*, 55 A.3d 1088, 1092 (Pa. 2012).

Where the proximate cause is at issue and reasonable minds may differ on the cause, even in an action for strict liability, evidence bearing on causation is relevant. Where that evidence is of negligence on the part of the user, the evidence remains nonetheless relevant. Thus, evidence on Dodson's negligence is relevant in considering causation. Accordingly, the

Plaintiff's motion *in limine* to preclude the Defendants from raising the alleged negligence or recklessness of Plaintiff as a defense to liability or causation is **DENIED**.

### B. EVIDENCE OF EMPLOYER OR THIRD-PARTY NEGLIGENCE IS ADMISSIBLE.

Plaintiffs have also challenged the admissibility of evidence regarding the negligence of Dodson's employer, Kost Tire and Auto Service. (Doc. 45; Doc. 46). Citing *Tsarnas v. Jones & Laughlin Steel Corp.*, 412 A.2d 1094, 1096 (Pa. 1980), Plaintiffs assert that Pennsylvania law clearly states the negligence of an employer is not relevant in consideration of a claim brought by an employee for injuries sustained as a result of the actions of a third-party tortfeasor. (Doc. 46, at 6). In *Tsarnas*, the plaintiff challenged the constitutionality of § 303(b) of the Workmen's Compensation Act, which read:

> "(b) [i]n the event injury or death to an employee is caused by a third party, then such employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to receive damages by reason thereof, may bring their action at law against such third party, but the employer, his insurance carrier, their servants and agents, employees, representatives acting on their behalf or at their request shall not be liable to a third party for damages, contribution, or indemnity in any action at law, or otherwise, unless liability for such damages, contributions or indemnity shall be expressly provided for in a written contract entered into by the party alleged to be liable prior to the date of the occurrence which gave rise to the action."
>
> *Tsarnas*, 412 A.2d at 1096.

In upholding the statute, the Pennsylvania Supreme Court summarized that:

> a third party whose negligence is responsible, in part, for an injury suffered by an employee protected by the Workmen's Compensation Act, may not, in the suit brought by the employee against him, join the employer as an additional defendant. Nor may the third party otherwise seek contribution or indemnity from the employer, even though the employer's own negligence may have been the primary cause of the injury.
>
> *Tsarnas*, 412 A.2d at 1096.

As noted by the Defendant, Kost is not a party, nor is there any intention that they be joined. Thus, the takeaway from *Tsarnas* barring joinder of the employer is not at issue. The introduction of evidence strictly on causation remains relevant to a strict products liability determination. To wit, the Workmen's Compensation Act provision cited by Plaintiffs and discussed in *Tsarnas* opens with "[i]n the event injury or death to an employee is *caused* by a third party . . ." See *Tsarnas*, 412 A.2d at 1096 (emphasis added). Causation remains a barrier to negligence consideration. Once causation is proven attributable to the third party, then employer negligence considerations are irrelevant. Until such a time, however, evidence bearing on causation should not be discounted. Post-*Tincher*, the Pennsylvania Supreme Court summarized the holding as eliminating the firm division between negligence and strict liability, reflecting the difficulty in separating strict liability from negligence partially because the risk-utility standard contained in *Tincher* invokes negligence considerations. *See Webb v. Volvo Cars of N. Am., LLC*, 148 A.3d 473, 482 (Pa. 2016).

As with consideration of Dodson's own alleged negligence, causation is a question to be resolved by the jury. Where causation remains at issue, contributory negligence remains an issue of material fact to for the jury to consider. *See Bailey v. B.S. Quarries, Inc.*, No. 3:13-CV-03006, 2016 WL 1271381, at *16 (M.D. Pa. Mar. 31, 2016). The risk of confusion remains upon presentation of incongruent theories of negligence and strict products liability. However, the Court believes proper jury instructions mitigate this risk of confusion. With the foregoing in mind, the Court will permit the introduction of evidence on employer negligence to the extent consistent with Pennsylvania law. Plaintiffs' motion *in limine* to preclude evidence, testimony, or argument concerning alleged negligence of Plaintiff's employer or third party in causing the subject accident is **DENIED**.

C. Evidence of a Lack of Prior, Similar Accidents is Admissible.

Next, the Plaintiffs argue that evidence regarding the alleged lack of similar incidents should be barred, as the demonstrated lack of a formal reporting system or knowledge of reporting requirements shows there is not an adequate foundation for introduction of such evidence. (Doc. 49; Doc. 50). Defendant responds that WWD designee Frank Lee was in constant communication with buyers that would have informed him of incidents, as well as constantly review safety recall postings. (Doc. 55).

As an initial matter, the parties disagree with the relevant guidance for inclusion. The Plaintiffs argue that introduction of this type of evidence is governed by *Spino v. John S. Tilley Ladder Co.*, 696 A.2d 1169 (Pa. 1997). Defendant counters that *Spino* is not controlling as a state case, citing *Forrest v. Beloit Corp.*, 424 F.3d 344, 354 (3d Cir. 2005). Under either, the Court finds that evidence of an alleged lack of prior similar incidents should be admitted.

First, the Court finds that the Federal Rules of Evidence are indeed the relevant considerations for evidentiary matters. In federal actions based on diversity, the merits of the case are to be resolved by the substantive law of the state in which the Court sits, while procedural matters are governed by federal law. As such, the substantive law of Pennsylvania law is utilized. *See Dorshimer v. Zonar Sys., Inc.,* 145 F.Supp.3d 339, 351 (M.D. Pa. 2015); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *see also Guaranty Trust Co. v. York*, 326 U.S. 99, 108 (1945).

As identified by Defendant, *Forrest* reiterates that the introduction of evidence regarding a lack of prior, similar accidents is procedural in nature and thus governed by federal law. This is a low bar, as the Court considers evidence relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in

determining the action. FED. R. EVID. 401. Defendant has made an initial showing on why it would have known of any prior, similar incidents. "Regular conversations with buyers" has a tendency to make the fact that WWD would have known of incidents more probable. Its knowledge of incidents may be considered in a risk-utility analysis for strict liability. Thus, both prongs are met. The extent to which this evidence is instructive is to be weighed by the jury.

Further, *Spino* does not stand for the overarching preclusion of a lack of prior incidents in products liability cases—nor do Plaintiffs argue as much. The *Spino* Court was mindful that "there is little logic in allowing the admission of evidence of prior similar accidents but never admitting their absence." *Spino*, 696 A.2d at 1174. In order to present such evidence however, the defendant must establish a foundation that they would have known about them. *See Spino*, 696 A.2d at 1173. This gateway is inherently fact specific and varies on a case-by-case basis. *Spino*, 696 A.2d at 1173. The *Spino* Court noted that prior claims testimony can and should be addressed through cross-examination, which was not done at trial. However, the court did not find the initial introduction of the reporting system to be in error. Likewise, while Defendant's reporting system may be challenged, an initial foundation describing the methods or lack thereof for collecting information on incidents has been offered.

Accordingly, Plaintiffs' motion *in limine* to preclude evidence, testimony, or argument regarding alleged lack of prior similar accidents is **DENIED**.

### D. THE OPINION OF DEFENDANT'S EXPERT WITNESS, ALFRED CIPRIANI, IS SUFFICIENTLY CONCRETE AND RELEVANT TO BE ADMISSIBLE.

Related to the motions to bar evidence of negligence by Dodson or Kost Tire and Auto, as well as of a lack of prior, similar accidents, Plaintiffs also seek to bar the introduction of opinions offered by Defendant's expert witness, Alfred Cipriani. (Doc. 47; Doc. 48). Plaintiffs

assert Cipriani's testimony is speculative, lacking in adequate foundation, and does not reflect the necessary degree of certainty to be admitted. (Doc. 48). They further argue that he is not qualified to offer an opinion, because he admittedly is not a tire design expert. Defendant responds that Cipriani is not an expert in tire design, he is an expert in accident reconstruction and offers a firm opinion that the design of the tire is not the cause of the rupture. (Doc. 54).

First, the Court does not find the scope of Cipriani's expertise bars the introduction of his testimony. While he is not a tire design expert, Cipriani has created a report detailing the cause of the rupture in this particular instance. (Doc. 48-3). The intent of his report is not to declare the adequacy of the tire design, but to offer opinion on what caused the tire explosion. (Doc. 48-3). The defective design is but one element in proving a claim for strict liability. A plaintiff must still establish that the design defect is not unrelated and indeed caused the injuries alleged. *See Spino*, 696 A.2d at 1172. As Cipriani is expected to testify that the cause of the rupture is not attributable to the bead, his testimony remains relevant and his tire design expertise will not preclude his introduction.

Thus, the Court turns to the contents of Cipriani's opinion, which Plaintiffs describe as speculative and without the necessary degree of certainty contemplated in *McMahon v. Young*, 276 A.2d 534 (Pa. 1971). In *McMahon*, the Pennsylvania Supreme Court reversed a jury verdict where a physician's testimony regarding the injuries of a party involved in a car accident was couched in probability instead of certainty. *McMahon*, 276 A.2d at 535. The physician opined that the injuries were "probably" caused by the accident. The Court summarized that "if the plaintiff's medical expert cannot form an opinion with sufficient certainty so as to make a medical judgment, there is nothing on the record with which a jury can make a decision with sufficient certainty so as to make a legal judgment." *McMahon*, 276 A.2d at 535.

Plaintiffs argue that the language in Cipriani's report is indistinguishable from the above, and specifically point to Cipriani's conclusion that the "[t]ire-changing machine condition, machine operating procedures, tire mounting and demounting procedures, effects of prior mounting and demounting of the Tire, and Tire history between time of manufacture, installation, and the accident cannot be discounted as probable causal factors in this accident." (Doc. 48, at 9-10). Defendant argues that this statement does not stand alone, but is the continuation of a conclusion that the weftless bead design was not the cause of the rupture. (Doc. 54, at 7).

The critical consideration in evaluating Cipriani's opinion is whether or not he affirmatively and supportably finds that the design of the tire was not the cause of the accident. "Speculative testimony or testimony made without reasonable certainty does not aid the trier of fact and should be stricken." *Glencannon Homes Ass'n, Inc., v. N. Strabane Twp.*, 116 A.3d 706, 721 (Pa. Commw. Ct. 2015) (quoting *Duquesne Light Co. v. Woodland Hills Sch. Dist.,* 700 A.2d 1038, 1047 (Pa. Commw. Ct. 1997)). However, "[a]n opinion of an expert based upon an adequate factual foundation is neither speculative nor conjecture, but a legitimate inference and as such has evidentiary value in determining disputed questions of fact." *Glencannon*, 116 A.3d at 721 (quoting *Albig v. Mun. Auth. of Westmoreland Cnty.,* 502 A.2d 658, 667 (Pa. Super. Ct. 1985)).

The Court finds that Cipriani's opinion indeed says that. Cipriani's opinion directly addresses the opinion offered by Plaintiffs' expert William J. Woehrle, including making specific judgments that the bead bundle did not rupture as indicated by Woehrle. (Doc. 48-3, at 32). Cipriani affirmatively states that Woehrle's conclusions are not supported by a scientific

examination of the tire, which shows that the rupture did not occur as described. (Doc. 48-3, at 32).

While not a tire design expert, his offered and unchallenged expertise in accident reconstruction is relevant to evaluation of the circumstances at hand. Further, while including inclusive language in places that by itself may not be permissible as expert testimony, Cipriani's conclusions as a whole contain affirmative declarations that refute the cause of the rupture as alleged by Plaintiffs and their expert. Given this, the Court finds that Cipriani's testimony is relevant and meets the standard of certainty necessary for its admissibility. Thus, Plaintiffs' motion *in limine* to preclude the testimony of Defendant's expert, Alfred Cipriani, is **DENIED**.

### E. Expert Testimony From Allan J. Kam Will Assist the Trier of Fact in Understanding the Evidence or Determining a Fact In Issue.

Next, the Court turns to Defendant's motions to preclude introduction of testimony by Plaintiffs' experts Allan Kam. (Doc. 38; Doc. 39). The Defendant argues that Kam's testimony will not assist the trier of fact as required by Fed. R. Evid. 702, as Kam cannot offer opinion on the design defect and his testimony on the "best practices" of importers would only confuse the jury. (Doc. 39). The Plaintiffs respond that Kam will testify on the duties and expectations of an importer before placing its product into the market. (Doc. 61). Further, they note Kam's testimony does not stand alone but is intended to work in conjunction with the testimony of William J. Woehrle, who will testify to the defective design of the tire.

Testimony of expert witnesses is governed by Rule 702 of the Federal Rules of Evidence. The Defendant has challenged Kam's admission citing 702(a). Under Rule 702(a):

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> **(a)** the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue . . .

FED. R. EVID. 702(a).

Thus, the Court is tasked with considering whether or not Kam's testimony will assist the jury in understanding the evidence or determining a fact in issue. Further, as Kam is offered to address solely the concerns on due care and not causation, the Court need only consider whether his testimony will assist in resolving standards of care expected of an importer. The Defendant argues that Kam's opinion will not assist in resolving the issues because "Kam fails to address how WWD's failure to have knowledge of or comply with the [sic] listed regulations caused Plaintiff's injury." (Doc. 39, at 7). However, this argument blurs the line between the duty owed and the legal cause of an injury.

Both duty and causation are necessary findings in resolving a claim for negligence, however an expert need not testify to every element of a claim. The relevant inquiry again is whether or not the testimony will assist the trier of fact in resolving a fact in issue. One fact in issue is the standard of care expected of importers and the alleged breach thereof by WWD. Kam's opinion is offered in conjunction with the opinion of William J. Woehrle, who is expected to testify to causation. The mere fact that Kam does not address causation is not enough to bar his testimony, as his testimony still addresses a fact at issue.

Accordingly, the Court finds that the expert testimony offered by Allan J. Kam will assist the trier of fact in understanding the evidence or determining a fact in issue. Having met the bar for admission under Rule 702, Defendant's motion *in limine* to preclude the expert testimony of Allan J. Kam is **DENIED**.

### F. Plaintiffs' Expert, William J. Woehrle, Is Qualified to Offer Opinion on the Defective Design of the Tire.

Lastly, the Court addresses the Defendant's motion to preclude the testimony of Plaintiffs' expert William J. Woehrle (Doc. 40; Doc. 41). As with Kam, the Defendant's basis for challenge stems come the language of Rule 702. They argue that Woehrle does not have the requisite expertise in tire design to render an opinion on the tire's design as cause for the rupture. (Doc. 41, at 5). They further point to the fact that Woehrle has no familiarity with BCT tires, has never tested single strand bead tires to failure, and is not an accident reconstructionist. (Doc. 41, at 5-6). The Plaintiffs argue that Woehrle has demonstrated automotive component expertise acquired by over 50 years of relevant testing, including tire testing. (Doc. 58).

Experts must have specialized knowledge in the area they are expected to testify in. The specialized knowledge expected of experts may be acquired through practical experience as well as academic training and credentials. *Elock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (quoting *Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998)). Guided by a policy of liberal admissibility of expert testimony, Third Circuit Courts require that "at a minimum, a proffered expert witness . . . must possess skill or knowledge greater than the average layman." *Elock*, 233 F.3d at 741 (quoting *Waldorf*, 142 F.3d at 625).

Without engaging in a lengthy recitation of Woehrle's CV, he has plainly engaged in sufficient practical experience on automotive component testing to possess skill or knowledge "greater than the average layman," including directly relevant testing. He has offered a sworn affidavit attesting to participating in testing for bead breaks in tires, examining tire failures based on bead defects, the development of the single strand bead, studies in simulating bead

stress capacity, as well as extensive professional experience in collateral but still related testing. (Doc. 58-3).

Plaintiffs and Woehrle have made a satisfactory initial showing on Woehrle's qualifications. At a minimum, the Court finds Woehrle qualified to offer his opinion into consideration. Thus, the Defendant's motion *in limine* to preclude the expert testimony of William J. Woehrle is **DENIED**.

## IV.   CONCLUSION

For the foregoing reasons, the motions *in limine* in this matter (Doc. 38; Doc. 40; Doc. 43; Doc. 45; Doc. 47; Doc. 49) are **DENIED**. An appropriate Order follows.

Dated: September 27, 2017                            *s/ Karoline Mehalchick*
                                                     **KAROLINE MEHALCHICK**
                                                     **United States Magistrate Judge**